IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SARAH GRAMMAR, as Administratrix of the Estate of Melvinteen Daniels, Deceased,<br><br>        Plaintiff,<br><br>        v.<br><br>JOHN J. KANE REGIONAL CENTERS - GLEN HAZEL,<br><br>        Defendant. | Civil Action No. 06-781<br><br>Judge Lancaster<br>Magistrate Judge Hay |

REPORT AND RECOMMENDATION

I.   RECOMMENDATION

It is respectfully recommended that the motion to dismiss submitted on behalf of defendant (Docket No. 9) be granted.

II.   REPORT

Plaintiff, Sarah Grammar, commenced this action against defendant John J. Kane Regional Centers - Glen Hazel ("the Kane Center"), alleging that the Kane Center failed to provide her mother, Melvinteen Daniels, with proper care. Plaintiff alleges that as a result, Ms. Daniels developed decubitus ulcers, suffered from malnutrition and was eventually diagnosed with sepsis which ultimately led to her death on January 22, 2005.

Plaintiff filed the instant complaint on June 13, 2006, bringing claims under § 1983 for wrongful death (Count I) and survival (Count II). Plaintiff alleges that defendant had a duty under the Omnibus Budget Reconciliation Act of 1987 ("OBRA"), the Federal Nursing Home Reform Act ("FNHRA"), 42 U.S.C. § 1396r, *et seq.*, and the implementing regulations found at 42 C.F.R. § 483, *et seq.*, to ensure quality care for its residents and that by failing to provide such care as delineated under the statute plaintiff has been deprived of her civil rights.

These statutes and the government programs they govern have been previously summarized by this Court as follows:

> Title XVIII of the Social Security Act establishing the Medicare Program, 42 U.S.C. § 1395 et seq., and Title XIX of the Social Security Act establishing the Medicaid Program, 42 U.S.C. § 1396 et seq., each provides that the federal Department of Health and Human Services is responsible for overall administration of the programs. Medicaid, a joint federal/state program, is administered by the individual states which, in order to participate in the program, must agree to comply with the requirements and standards of the Medicaid Act. 42 U.S.C. § 1396a. Private individuals and organizations such as the Plaintiff contract with HHS and the respective states to provide medical services, including residential skilled nursing care, to the elderly, disabled and/or low-income individuals covered by Medicare and Medicaid.
>
> HHS has delegated implementation of Medicare regulations and compliance with the health and safety standards established for the skilled nursing facilities to the Health Care Financing Administration. HCFA in turn contracts with agencies in each state to conduct on-site surveys to determine if the providers meet those standards. In Pennsylvania, the Department of Public Welfare is responsible for those surveys. To be certified as a "nursing facility," the organization must comply with the requirements of 42 U.S.C. § 1395i-3(b)-(d) for provision of services under Medicare and 42 U.S.C. § 1396r(b)-(d) for Medicaid services, as well as with the extensive regulations promulgated by the Secretary of HHS. Once a Pennsylvania provider has been initially certified, the DPW conducts periodic re-inspections to assure that those standards are maintained. 42 U.S.C. § 1395i-3(g); 42 U.S.C. § 1396(g). The Medicare and Medicaid standards are nearly identical.
>
> In 1987, as part of the Omnibus Budget Reconciliation Act ("OBRA 87"), Congress amended the Social Security Act to require higher standards of safety, physical and mental care, and rights of residents at nursing homes. Federal Nursing Home Reform Act, Pub.L. No. 110-203, codified at 42 U.S.C. §§ 1395i-3 and 1396r. These changes led in turn to more stringent standards for nursing home accreditation and participation. Until the OBRA 87 amendments, only two sanctions were available for nursing homes that failed to meet participation requirements. If the severity of the non-compliance (the so-called "deficiency") posed "immediate jeopardy" to the well-being of the residents, the Secretary of Health and Human Services or the State could decertify the facility and terminate its eligibility to receive Medicaid reimbursements. If, on the other hand, the deficiency did

> not pose an immediate and serious threat to the patients' health and safety, HHS or the State could deny payment for new admissions for up to eleven months. *Brogdon v. National Healthcare Corp.*, 103 F. Supp.2d 1322, 1327 (N.D. Ga. 2000). However, the OBRA 87 amendments not only imposed unscheduled "standard surveys" and "extended surveys" that determined if the facility met specific standards, they also provided a number of new sanctions to encourage compliance. These so-called "remedies" included denial of payments, civil monetary penalties for each day of non-compliance, appointment of temporary management, and under Medicaid, closure of the facility and transfer of residents to other facilities. *Brogdon, id.*, citing 42 U.S.C. § § 1395i-3(h)(2)(B) and 1396r(h)(2)(A), (h)(3).

Trade Around the World of PA v. Shalala, 145 F. Supp. 2d 653, 655- 656 (W.D. Pa. 2001).

It is against this backdrop that we address defendant's motion to dismiss in which it argues that no private right of action exists directly under the OBRA or the FNHRA and that Congress did not intend the statute to create a federal right enforceable through § 1983. Rather, defendant argues, the statutory provisions cited by plaintiff merely set forth the requirements that a nursing facility must comply with in order to qualify for federal funding under the Medicaid Act.

In reviewing a motion to dismiss under Rule 12(b)(6), all well pleaded allegations of the complaint must be accepted as true and viewed in a light most favorable to the non-movant. Brader v. Allegheny General Hospital, 64 F.3d 869, 873 (3d Cir. 1995); Scrob v. Patterson, 948 F.2d 1402, 1405 (3d Cir. 1991). The Court is not, however, required to accept as true unsupported conclusions and unwarranted inferences. Schuylkill Energy Resources v. PP&L, 113 F.3d 405, 417 (3d Cir. 1997). Thus, "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," the motion to dismiss is properly granted. Haines v. Kerner, 404 U.S. 519, 520-21 (1972), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The issue is not whether the plaintiff will prevail in the end

3

but only whether he should be entitled to offer evidence in support of his claim.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

Under § 1983, liability will be imposed on anyone who, acting under the color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws."  42 U.S.C. § 1983.  The Supreme Court of the United States has held that § 1983 protection extends to violations of federal statutes as well as the Constitution.  Maine v. Thiboutot, 484 U.S. 1, 4 (1980).  In order to have a cause of action under § 1983, however, "a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*."  Blessing v. Freestone, 520 U.S. 329, 340 (1997) ("Blessing").

To determine whether a particular statutory provision gives rise to a federal right Courts typically have applied what has become known as the "Blessing test":

> First, Congress must have intended that the provision in question benefit the plaintiff. *Wright [v. Roanoke Redevelopment and Housing Authority*], 479 U.S. [418], 430 [(1987)]....  Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence. *Id.*, at 431-432....  Third, the statute must unambiguously impose a binding obligation on the States.  In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms.  *Wilder [v. Virginia Hospital Assn.*, 496 U.S. 498,] 510-511 [(1990)]....

Blessing, 520 U.S. at 340-41.  Concerned that some courts were interpreting Blessing as allowing plaintiffs to enforce statutes under § 1983 merely because they fall within the "zone of interests that the statute is intended to protect," or "something less than what is required for a statute to create enforceable rights directly from the statute itself under an implied right of action," the Supreme Court subsequently made clear that a plaintiff must show that Congress intended to create an "unambiguously conferred right" by pointing to clear and unambiguous "rights-creating language."  Gonzaga University v. Doe, 536 U.S. 273, 283, 290 (2002)("Gonzaga").

4

In so holding, the Supreme Court found that the determination of whether a statute confers rights enforceable under § 1983 should be guided by implied right of action cases expressly rejecting the notion that the two lines of cases are separate and distinct. Id. at 283. Rather, the Court found that the questions of whether a statutory violation may be enforced through § 1983 and whether a private right of action can be implied from a particular statute overlap in that the initial inquiry in a § 1983 action -- whether a statute confers a right -- "is no different from the initial inquiry in an implied right of action case, the express purpose of which is to determine whether or not a statute 'confer[s] rights on a particular class of persons.'" Id. at 285, quoting California v. Sierra Club, 451 U.S. 287, 294 (1981). The Court therefore concluded that "[a] Court's role in discerning whether personal rights exist in the § 1983 context should ... not differ from its role in discerning whether personal rights exist in the implied right of action context." Id. at 285.

In the instant case, defendant has argued, and plaintiff does not dispute, that neither the OBRA nor the FNHRA provides for a private right of action. Indeed, defendant has cited to a number of cases that have so held in which, like the instant case, an individual seeking monetary damages has brought suit directly against a provider for violations under the FNHRA. See Solter v. Health Partners of Philadelphia, Inc., 215 F. Supp. 2d 533, 540 (E.D. Pa. 2002) ("Solter") (Finding that plaintiff had no private right of action against her health insurer and its agent under the Medicaid Act for denying treatment.); Brogdon ex rel. Cline v. National Healthcare Corp., 103 F. Supp. 2d 1322, 1330-32 (N.D. Ga. 2000) ("Brogdon") (Finding that Congress did not intend to authorize nursing home residents to file suit against nursing homes to enforce the standards required for participation in the Medicare and Medicaid programs.); Nichols v. St. Luke Center of Hyde Park, 800 F. Supp. 1564, 1567-68 (S.D. Ohio 1992) (Finding that no private right of action exists under Medicaid Act.); Chalfin v. Beverly Enterprises, Inc.,

741 F. Supp. 1162, 1166-67 (E.D. Pa. 1989) (Dismissing claims brought by nursing home patient against nursing home finding that Congress did not intend to create a private right of action under the Social Security Act.); Ratmansky ex rel. Ratmansky v. Plymouth House Nursing Home, Inc., 2005 WL 770628 * 3 (E.D. Pa. April 5, 2005) (Finding that the Medicare Act and regulations do not create a private right of action against nursing home.); Sparr v. Berks County, 2002 WL 1608243 *2-3 (E.D. Pa. July 18, 2002) (Dismissing action brought by executor of patient's estate against the nursing home for violations of the FNHRA finding that although the statute was enacted to benefit the plaintiff there was nothing in the legislative purpose or history to suggest that Congress intended to create a private right of action.); Andrusichen v. Extendicare Health Services, Inc., 2002 WL 1743576 *2-3 (E.D. Pa. July 23, 2002) (same).  See also Tinder v. Lewis County Nursing Home District, 207 F. Supp. 2d 951, 957 (E.D. Mo. 2001) (Finding Congress did not intend to create a private right of action under the OBRA or FNHRA).  Because Gonzaga instructs that where there is no implied right of action under a statute, there is no right enforceable under § 1983, it follows from these cases that plaintiff has no enforceable right under § 1983 and, thus, has failed to state a claim.

Notably, plaintiff has not discussed the cases relied upon by defendant or cited to any cases that have held that a private right of action exists under the OBRA or FNHRA.  Indeed, plaintiff has not addressed defendant's argument in this regard at all but rather cites to several cases in which § 1983 actions brought against the state for violations of the Medicaid Act have been permitted to go forward.  See Sabree ex rel. Sabree v. Richman, 367 F.3d 180 (3d Cir. 2004) ("Sabree"); Rolland v. Romney, 318 F.3d 42 (1st 2003) ("Rolland"); Tinder v. Lewis County Nursing Home District, 207 F. Supp. 2d 951 (E.D. Mo. 2001) ("Tinder").  These cases, however, are easily distinguishable from the case at bar.

In Tinder, like in the instant case, the plaintiffs brought a § 1983 action against the county nursing home where their father had been a resident. Unlike the instant case, however, the plaintiffs also brought claims directly under the OBRA and FNHRA. Although the Court dismissed the claims brought directly under the OBRA and FNHRA, finding that Congress did not intend to establish a private right of action under those statutes, it found that the alleged OBRA violations could form the basis for the plaintiffs' § 1983 claims. Id. at 955, 957. Tinder, however, was decided before the Supreme Court made clear in Gonzaga that the inquiries involved in determining whether a statute confers a right enforceable under § 1983 and whether an implied right of action exists is no different. Moreover, in deciding that the OBRA may provide the basis for a § 1983 claim, the court did not engage in any analysis whatsoever or even mention the standards set forth in either Blessing or Gonzaga for assessing whether Congress intended to confer an enforceable right. Under these circumstances, Tinder provides little support for plaintiff's position.

Further, in both Sabree and Rolland, and in seemingly every other § 1983 case in which it was found that the Medicaid Act created an enforceable right, the case was brought against the state itself or the state agency responsible for implementing the provisions of the Medicaid Act rather than directly against the care provider. Moreover, the relief sought by the plaintiffs was in the form of injunctive relief rather than the monetary damages sought by plaintiff here. See Watson v. Weeks, 436 F.3d 1152 (9th Cir.), cert. denied, ___ U.S. ___, 127 S. Ct. 598 (2006) (Medicaid eligible individuals brought § 1983 suit against Director of Oregon Department of Human Services and other state health officials seeking injunctive and declaratory relief.); Rabin v. Wilson-Coker, 362 F.3d 190 (2nd Cir. 2004) (Medicaid recipients brought § 1983 action against Commissioner of the Connecticut Department of Social Services claiming they were entitled to transitional medical assistance after the state lowered its income eligibility

limits.); Clark v. Richman, 339 F. Supp. 2d 631 (M.D. Pa. 2004) (Medicaid recipients brought suit under § 1983 against Secretary of the Pennsylvania Department of Public Welfare seeking enforcement of certain provisions of the Medicaid Act.); Ottis v. Shalala, 862 F. Supp. 182 (W.D. Mich. 1994) (Residents of Michigan nursing homes brought § 1983 action against the Secretary of Health and Human Services and other state health officials asking Court to order defendants to establish and implement enforcement procedures and remedies required under the OBRA.); Conner v. Branstad, 839 F. Supp. 1346 (S.D. Iowa 1993) (Group of institutionalized disabled individuals brought § 1983 action against the Governor of the state of Iowa and the Director of the Department of Human Services challenging the state's system of providing services.). Although plaintiff argues that these are distinctions without a difference, we disagree.

Indeed, the distinction appears to lie in the fact that the Medicaid Act merely sets forth the requirements that the Secretary of Health and Human Services must implement and the services that the state must require nursing facilities to provide if the state wants to qualify for federal funding. Thus, the statute imposes a duty only on states which choose to participate in the program and not on the nursing homes that provide medical services. As stated by the District Court for the Eastern District of Pennsylvania,

> [I]n order to qualify for federal assistance, a participating state must submit to the Secretary and have approved "a state plan for medical assistance." *Wilder [v. Virginia Hospital Assoc.*], 496 U.S. [498,] 501 .... [which] must "include reasonable standards ... for determining eligibility for and the extent of medical assistance under the plan which ... are consistent with the objectives [of the Medicaid Act]." 42 U.S.C. § 1396a(a)(17).
>
> \* \* \*
>
> The Medicaid program embodies a partnership between the federal government and the states, which involves a combination of federal funding and state administration.... "It is clear from the legislative history that, rather than focusing on the individual patient, the legislation is primarily directed at the role of participating *states* in providing medical care with the assistance of federal funds." *Chalfin*, 741 F.Supp. at 1169 (emphasis in original). "The

> Medicaid program is not intended to meet all the medical needs of recipients. Rather, its goal is to provide medical assistance 'as far as practicable under the conditions of [each] state.' " *Id.* (quoting *Bumpus v. Clark*, 681 F.2d 679, 684 (9th Cir.1982) (quoting 42 U.S.C. § 1396)).

Solter, 215 F. Supp. 2d at 535, 540.  See Brogdon, 103 F. Supp. 2d at 1327 (Finding that if a state chooses to participate in the Medicaid program in order to receive funding from the federal government, it is the state that must comply with the requirements of the Act and its implementing regulations by submitting and enforcing an appropriate state plan.); Andrusichen v. Extendicare Health Services, Inc., 2002 WL 1743576 at * 2, quoting Chalfin v. Beverly Enterprises, Inc., 741 F. Supp. 1162, 1167 (E.D. Pa. 1989) ("The statute is about disbursement of funds and the conditions a recipient of those funds must comply with.... [T]he legislation is primarily directed at the role of participating *states* in providing medical care with the assistance of federal funds.  The bill attempts to outline certain requirements which the *state* must comply with in order to become and remain eligible for federal funding.").  See also Trade Around the World of PA v. Shalala, 145 F. Supp. 2d at 655-56.  Because the Medicaid Act speaks to the states and their obligations thereunder, it follows the states should be held accountable by those who are ultimately harmed when the state does not fulfill its obligations.  It does not follow that an individual may bring a personal injury claim against a nursing home for providing insufficient care since the statute does not impose a duty on nursing care providers.

   In this manner, our conclusion that plaintiff here has no private right of action and no federal right to enforce the provisions of the Medicaid Act against the Kane Center is not inconsistent with the Third Circuit's decision in Sabree.  Although in Sabree, the Court found that the Medicaid Act unambiguously conferred the rights which the plaintiffs sought to enforce, the right at issue in that case was the right to have the state, and more specifically Pennsylvania's Secretary of Health and Human Services, provide certain services that the plaintiffs qualified for

9

under Pennsylvania's medical assistance plan. Sabree, 367 F.3d at 181, 182, 189, 194. Indeed, the Court repeatedly framed the issue in terms of the plaintiffs' right to sue *Pennsylvania* to enforce the provisions of the Medicaid Act that required *Pennsylvania* to provide medical assistance covering the services sought by the plaintiffs. Id. at 182, 189. Opining that the provisions at issue "indisputably ... create law *binding on those states* choosing to accept Medicaid funding," the Court was able to conclude that the provisions satisfied the Blessing test not only because the plaintiffs were the intended beneficiaries of the provisions and the rights sought to be enforced -- i.e., requiring states which accept Medicaid funding to provide ICF/MR services -- are specific and enumerated, but because the obligation imposed on the *states* to provide those services is unambiguous and binding. Id. at 189 (emphasis added). See Blessing, 520 U.S. at 340-41. Having found that the Medicaid Act is binding on the states it follows that it may be enforced against the state.

   Here, however, unlike in Sabree, plaintiff is not proceeding against the state agency responsible for implementing and overseeing the relevant provisions of the Medicaid Act. Thus, whether the statute imposes a binding obligation on the *states* -- the third Blessing factor -- appears irrelevant since the question in this case is whether plaintiff has an enforceable right against the nursing home. The relevant question therefore would appear to be whether the statute imposes a binding obligation on the nursing homes that actually provide the services which does not appear to be the case. See Solter, 215 F. Supp. 2d at 535, 440; Trade Around the World of PA v. Shalala, 145 F. Supp. 2d at 655- 656; Brogdon, 103 F. Supp. 2d at 1327; Andrusichen, 2002 WL 1743576 at *2. Moreover, the fact that plaintiff seeks monetary damages against the nursing home for failing to provide proper care rather than seeking to require the state to implement the provisions of the Medicaid Act suggests that this case is more akin to a private right of action case which plaintiff does not dispute is unavailable under the OBRA and the

FNHRA.[1]  While, to be sure, nursing home residents are within the "zone of interest" that the Medicaid Act was designed to protect, neither the structure nor the text of the statute suggest that Congress intended it to be a device through which individuals could bring suit directly against a nursing home under either an implied right of action or § 1983.  See Gonzaga, 536 U.S. at 286 ("[W]here the text and structure of the statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under § 1983 or under an implied right of action.").  See also Solter, 215 F. Supp. 2d at 540 (Finding no implied private right of action, in part, because "[i]mplying a federal cause of action which would place enforcement of the Medicaid Act in the federal courts ... would significantly distort the congressional scheme of placing administration of the program under the Medicaid Act in the hands of the states.")  Indeed, other than Tinder, plaintiff has not cited to one case, nor has the Court uncovered one, where an individual seeking monetary damages was permitted to proceed against a nursing home under § 1983 or an implied private right of action for alleged violations of the OBRA or FNHRA.  Under these circumstances, it appears that plaintiff has no enforceable right under the OBRA and FNHRA against the Kane Center and, consequently, has failed to state a claim under § 1983.[2]

---

[1] Although the Court is cognizant of the fact that the Kane Center is a county owned and operated facility which appears to render it a "state actor" for purposes of § 1983, it does not alter the fact that it is not the state entity to which the Medicaid Act speaks.  Moreover, as argued by defendant, Congress could not have intended to create a right in individuals to bring suit against county run nursing homes under § 1983 for alleged violations of the Medicaid Act when they could not proceed directly against private nursing homes for the same violations.

[2] Although the Court recognizes that it concluded otherwise in Quinlan v. John J. Kane Regional Centers- Glen Hazel, Civ. Action No. 04-0485 (W.D. Pa. 2005), a decision which is not binding here, defendant at that time made little to no argument in support of its motion to dismiss but merely concluded that plaintiff had failed to point to any "clear and unambiguous rights-creating language" in the amended complaint.  It did not make the arguments as it has here regarding the absence of an implied private right of action under the OBRA and FNHRA, the structure and purpose of the statutes, or the apparent absence of any § 1983 cases in which the

Having found that plaintiff is unable to demonstrate that a federal right has been unambiguously conferred by Congress in the first instance, we need not address defendant's alternative argument that Congress nevertheless did not intend the right to be enforceable under § 1983.  See Blessing, 520 U.S. at 341; Sabree, 367 F.3d at 193.

For these reasons, it is recommended that the motion to dismiss submitted on behalf of defendant (Docket No. 9) be granted.

Within ten (10) days of being served with a copy, any party may serve and file written objections to this Report and Recommendation.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.

Respectfully submitted,

/s/   *Amy Reynolds Hay*
AMY REYNOLDS HAY
United States Magistrate Judge

Dated: 6 March, 2007.

cc:   Robert F. Daley, Esquire
      Peirce Law Offices
      707 Grant Street
      2500 Gulf Tower
      Pittsburgh, PA 15219

      Leah L. Roth, Esquire
      Michael R. Lettrich, Esquire
      Meyer, Darragh, Buckler, Bebenek & Eck
      U.S. Steel Tower, Suite 4850
      600 Grant Street
      Pittsburgh, PA 15219

---

plaintiff was proceeding directly against the nursing home for monetary damages.  Because the Court finds these arguments compelling we have reached a contrary result in this case.

12